## McKinney v. Holt, Drainage Commissioner.,

(Decided December 1, 1925.)

### Appeal from Union Circuit Court.

Drains—Under Original Drainage Act, Drainage Commissioner Authorized to Make Assessment and Levy to Pay Additional Costs Arising from Court Order and Unforeseen Causes.—Where cost of drain was increased $9,000.00 over estimated cost due to court's order for bridge across ditch and unforeseen causes, held that drainage commissioner, under Ky. Stats., section 2380-35, had authority to make additional assessment and levy, irrespective of 1918 amendment.

T. S. WALLER, JR., for appellant.

E. R. MORTON for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

The "Goose Pond" public ditch, in the drainage district bearing that name, has been constructed in Union county, Kentucky. The estimated cost of the ditch was $47,683.80. That sum was raised by levy and assessment against the property composing the drainage district. By an appeal to the circuit court the cost of the improvement was increased $5,000.00 when that court adjudged that certain bridges would have to be built across the ditch. Upon the completion of the ditch, in addition to that increased cost, it was found that from causes not contemplated when the estimates were made the project had cost $4,000.00 in excess of the estimates and original levy, making a total of $9,000.00 that the project cost in excess of the assessment as confirmed by the county court.

Whereupon, appellee, G. W. Holt, drainage commissioner of Union county, gave notice to the landowners in that drainage district, as is required by law, that he would apply for an additional levy to the amount of twenty per cent of the original assessment to pay the increased cost of the completion of the ditch and the amount added by the judgment of the circuit court on account of the bridge structures required to be built. Appellant, Monroe McKinney, contested his right to do so, and this action was instituted between the parties under the Declaratory Judgment Act for a settlement of their controversy.

Our drainage law is contained within subsections 1 to 50 of section 2380, Carroll's Kentucky Statutes, 1922. The original act was enacted in 1912. In 1918 the act was amended. Appellant contends that in so far as the amendment of 1918 undertook to amend subsection 35 of section 2380, the amendment was and is void because enacted in violation of the provisions of section 51 of our Constitution. He further contends that appellee, the drainage commissioner, can find authority for an additional levy to finish paying for the drainage project in question only in what purports to be the amendment to that subsection of the act. Therefore, he contends, since the amendment is void, that appellee, as the drainage commissioner, is without authority to make or to ask for the additional levy and assessment. Appellee contends, first, that he has authority to make the additional assessment and levy to pay the balance due on the drainage project under the terms of the original subsection 35 of section 2380, as enacted in 1912, independent of the amendment of 1918; and, second, that if the court should be of the other opinion then the amendment of 1918 was enacted in consonance with and not in violation of the provisions of section 51 of our Constitution, and that, therefore, the amendment is not void but valid.

Manifestly then, if appellee's first contention is correct, we need go no further, since the real issue between the parties is whether or not an assessment to pay the balance due on the drainage project in question may now be made.

Subsection 35 of section 2380, as originally enacted in 1912, reads:

"When said court has confirmed an assessment for the construction of any public levee, ditch or drain and such assessment has been modified by a court of superior jurisdiction, but for some unfore-

seen cause it can not be collected, the board of drainage commissioners shall have power to change or modify the assessment as originally confirmed to conform to the judgment of the court and to cover any deficit that may have been caused by the order of said court, or unforeseen occurrence. The said re-levy shall be made for the additional sum required, in the same ratio on the lands as the original assessment was made.''

The amendment of 1918 did not alter or repeal that part of the section in any particular, but merely added another paragraph to it. No one reading the original subsection can question the authority of the board of drainage commissioners to make an additional assessment in the case now before us to pay the cost of the bridges which were added to the original assessment as confirmed in the county court by the judgment of the circuit court on appeal, because such authority is found beyond question in its plain and unambiguous terms. There is some doubt and ambiguity as to what was meant by some of the things said in that original subsection, but beyond all question it does confer authority upon the board of drainage commissioners to make an additional assessment to cover additional cost of the project imposed by the circuit court on appeal. Therefore, appellant's contention that appellee must resort to the provisions of the amendment of 1918 for authority to make an additional levy to cover the cost of the bridges ordered built by the circuit court herein on the appeal is wholly without foundation.

The original section provided not only that ''The board of drainage commissioners shall have power to change or modify the assessment, as originally confirmed, to conform to the judgment of the court and to cover any deficit that may have been caused by the order of said court,'' but it also granted authority to change or modify the assessment as originally confirmed to cover any deficit that may have been caused by ''unforeseen occurrence.'' The right of the board of drainage commissioners to modify or change the original assessment was not confined to cases in which that became necessary to conform to the judgment of the superior court on appeal; they were granted that authority also to meet ''unforeseen occurrence.'' The following sentence of the original act then provided how the cost of the project changed

either by order of the superior court on appeal or by "unforeseen occcurrence" should be made. The relevy for the additional sum required must be made in the same ratio on the lands as the original assessment was made. It seems to the court that the language used to express the intention of the legislature is sufficiently broad to give us to understand that it was intended to confer upon the board of drainage commissioners authority to meet whatever condition might be in existence upon the completion of the project. The original levy and assessment, as provided for by the act, is made upon a mere estimate. The legislature understood, of course, that the actual cost of the project could rarely be made to conform to the original estimates. It certainly was intended, as the other subsections of the section leave no room for doubt, that the cost of the project should be borne by the land-owners benefited by it. If the contract for digging the ditch should be let upon a yardage basis—the usual method of doing so—the legislature, of course, understood that no definite estimate as to the number of yards either of earth or stone could be made. A contract let upon that basis may either overrun or underrun the estimates, making the ultimate cost of the project less or greater than the estimate and original assessment, as the case may be. It certainly was never intended by the legislature that if under a contract let on a yardage basis the number of yards removed in excavating the ditch should overrun the estimate and original assessment that the contractor could not be paid for the overrun. No other provision for payment under such circumstances is anywhere made than the general provision that the cost of the project shall be borne by the lands benefited by it. If the yardage should underrun the estimates, certainly the contractor would not be entitled to be paid for the yardage he did not remove in excavating the ditch, and the board of drainage commissioners would not have authority to pay him or to retain the excess of the levy over the cost of the project. It was certainly contemplated that under those conditions the excess of the levy over the cost of the project should either not be collected, or if collected should be refunded. This court is of the opinion that such contingencies were in the mind of the legislature when it enacted the original 35th subsection of section 2380, that quoted above; and that when they provided that if the assessment as originally confirmed should be modified, that is, either enlarged or decreased,

by the judgment of a court of superior jurisdiction on appeal or by "unforeseen occurrence," then they intended that the board of drainage commissioners would have authority to change the original assessment and levy to meet the changed condition. We, therefore, conclude that authority for making an additional levy to pay the $5,000.00 increased cost of the project on account of the bridges added to it by order of the circuit court on appeal, and to cover the $4,000.00 which the completion of the project disclosed it cost more than the original estimate as confirmed by the county court, may be found in the provisions of the original subsection and that resort will not have to be had to the amendment of 1918 for authority so to do.

Having reached that conclusion no necessity exists for our determining the question whether or not the amendment of 1918 is void as in violation of section 51 of our Constitution.

Wherefore, the judgment appealed from, for the reasons herein indicated, is affirmed.

Whole court sitting.